# UNITED STATES

*v.*

# BALBAS.

---

San Juan, Criminal. No. 673.

MEMORANDUM AS TO SENTENCE.

Criminal Law—Reformation.
     1. The question of reformation can enter only slightly in political cases; it concerns rather prison methods than the sentence itself.

## United States v. Balbas.

Punishment.

    2. The primeval object of sentences is punishment of the offender, whether by fine, imprisonment, or both.

Punishment—Deterring Offender.

    3. Where the offense is committed through a newspaper in Spanish among a people, on account of the language, outside of American influences, the question of deterring future offenders is of a special force in war times.

Imprisonment—Length.

    4. In the case of a political offense it is important that the offender be restrained for the remainder of the war and including a time thereafter during which political readjustment would be in progress. The question of the press has always been a serious one in Latin countries. The faithful co-operation of the press is very important in time of war. There must be no attacks on the military forces by persons protected by the flag.

Penitentiary—San Juan.

    5. Imprisonment in the penitentiary at San Juan cannot secure the best results, and in the case of imprisonment exceeding one year the court will select Atlanta penitentiary for political prisoners. Each count being a separate serious offense, the sentence of each should ordinarily exceed one year so as to secure penitentiary imprisonment.

Opinion filed December 17, 1917.

---

HAMILTON, Judge, delivered the following opinion:

As this case is important in itself and as a precedent, and as the imprisonment imposed may be the subject of consideration after the term of the officials engaged in the trial, it seems proper to record the reasons leading to the conclusions reached.

The object of punishment of criminals is threefold, or perhaps fourfold, and these elements have been taken into account.

PORTO RICO

United States v. Balbas.

1. The object often uppermost in the minds of criminologists is reformation of the criminal, but that can enter only to a very slight degree in political crimes, such as the one at bar. This point must be left more to prison methods than considered in the imposition of a sentence itself.

2. The primeval object of sentences is punishment of the offender. The law infringed in this case provides for either imprisonment or fine, or for both imprisonment and fine, and it seems proper to take the latter course. The offense committed was a publication in a newspaper, presumably for financial gain, and so a fine should be included in the punishment, while, on the other hand, reasons to be mentioned show that the principal punishment should be imprisonment. Therefore the fine should be lighter proportionately than the punishment imposed.

3. All crimes are against the public, against the government, in one sense or another, even though they be the injury of only one man, as in the case of murder. But the infringement of the law in this case is a public crime of a different character, because interfering with the military forces of the United States in time of war strikes at the very vitals of government itself. How much harm was done in this particular case it is impossible to say, but the jury has found, and the court sees no reason to differ, that the intent of the act committed was thoroughly bad. It was a publication largely in Spanish and for the Spanish speaking people of Porto Rico. One publication was in English, but would reach many of the educated class of the same people. While it might not be competent evidence in the trial of the case, nevertheless in imposing sentence the court cannot be ignorant of and cannot leave out of account the fact that the language used and the mode of expression could be, and in this case was, a screen for worse than what was actually

United States v. Balbas.

said, and was published among a people living largely on reports of different kinds,—people who are more excitable than Anglo-Saxons, and on account of speaking Spanish live to a large extent outside of American national influences. There are also many Spaniards in Porto Rico who have preserved their old allegiance. They constitute an important element, perhaps the most important commercial element of the population. The prisoner is shown to have made some attempt to preserve his Spanish citizenship. It is not in evidence that he is intimate with this element, but the court has reason to believe such is the case. There must be no hostile neutrals under the American flag, and the articles of the prisoner would tend to encourage such a class. The defendant knew all these circumstances and took advantage of them. It must be made undesirable for any-one else to repeat such conduct. Porto Rico is in an exposed position from a military and naval point of view, and unsettled politically, and great care must be exercised in regard to its people and institutions, especially in war time. One object of punishment is to deter future offenders, and that applies with especial force to the nature of the case at bar.

4. In regard to political offenses, particularly those connected with the misuse of public speech and the freedom of the press, it is important to a country in time of war that the offenders be restrained for the length of the war, that is to say, that they be put in a place where during hostilities and the excited condition of public mind connected with war, they can do no harm. Imprisonment, therefore, should be for a length of time that will secure this result, and must include a reasonable period after the probable length of war, during which great political readjustments may be in progress. The question of the press has always been a serious one in Latin countries.

United States v. Balbas.

Even during the great epoch of the Constitution of 1812 the Duke of Wellington had to comment upon the excessive freedom of utterance at Seville, and the same has been true in Spain and America more or less ever since that time. Spanish history developed a particularistic tendency in the peninsula, and the additional elements making up the Latin-American character seem to have intensified individualistic tendences. Porto Rico is rapidly changing, but race features still remain as well as the Spanish language. Mr. Justice Holmes has applied the word "meridianal" to the forcible, not to say ultra, language sometimes used in publications on this Island. Gandia v. Pettingill, 222 U. S. 452, 458, 56 L. ed. 267, 268, 32 Sup. Ct. Rep. 127. The war has changed conditions as to governmental affairs. The faithful co-operation of the press of the country is very important in time of war. The prisoner in this case has taken criminal advantage of the freedom of the press to continue in time of war, although in a different form, the propaganda of separation from America which he had been making in time of peace. He is not indicted for that previous propaganda, but it is in evidence and what he said then as well as his printed utterances after the Postoffice authorities stopped his paper must be taken into account by the court in considering prevention for the future a light punishment for so earnest, not to say dangerous, a man would be an incentive to himself and to others to repeat the same kind of conduct. This cannot be permitted in time of war. There must be no rear attack on the military forces of America by persons protected by our flag.

5. The report of the grand jury recently made to the court shows that these objects cannot be secured by imprisonment in the penitentiary at San Juan. This penitentiary is not suitable for such cases. The place of confinement is by Revised

United States v. Balbas.

Statutes, § 5546, Comp. Stat. 1916, § 10,547, left to the discretion of the Attorney General of the United States; and his construction is that in a case of imprisonment exceeding one year he will designate for political prisoners from Porto Rico the Federal penitentiary at Atlanta, Georgia. It seems proper, therefore, that the imprisonment on each count, each of which in the eye of the law is a separate crime, should exceed one year.

The result, therefore, is that the prisoner should be sentenced to pay a fine of $1,000 on each count and to imprisonment for two years on each count. This will carry the term well over any probable duration of the war and its readjustments, and will leave it open to the executive power upon a change of circumstances to take any action which may then seem proper. The court must act now with regard to the facts as they present themselves. The executive may interfere later to make any change, if any appear proper.